MOLYNEAUX v. CO-OPERATIVE BUILDING BANK.    (No. 274/122.)

(Supreme Court, Appellate Division, Third Department.    November 10, 1915.)

1. BUILDING AND LOAN ASSOCIATIONS ⬳41—MATURED STOCK—REFUSAL TO PAY—ARTICLES OF ASSOCIATION—EFFECT.

Where plaintiff, a paid-up shareholder in defendant mutual loan association, demanded the matured value of his stock, and there were unpaid applications of other shareholders on file amounting to more than one-third of the association's cash receipts from the time of the plaintiff's demand to the bringing of suit, and the company's articles of association provided that the amount paid out in withdrawals in any week should not exceed one-third of the cash receipts for such week, defendant was not liable for its failure to pay, since the articles of association and by-laws of a building and loan association constitute the contract between it and its stockholders.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 81–85; Dec. Dig. ⬳41.]

2. BUILDING AND LOAN ASSOCIATIONS ⬳14—MATURED STOCK—FAILURE TO PAY—AUTHORITY OF SUPERINTENDENT OF BANK TO TAKE OVER BUSINESS—EFFECT.

Banking Law (Consol. Laws, c. 2) § 229, as amended by Laws 1910, c. 126, providing that, whenever applications for withdrawals have been on file for two years, the superintendent of banks may take possession of the association's property and business until final liquidation, is not an implied command to a building and loan association to pay stockholders' demands for withdrawals of matured stock within two years, so as to give a cause of action on failure to pay within that time.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 16–19; Dec. Dig. ⬳14.]

Appeal from Trial Term, Ulster County.

Action by Elmer E. Molyneaux against the Co-operative Building Bank. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Lexow, MacKellar & Wells, of New York City (George M. Mac-Kellar and Robert Gerbracht, Jr., both of New York City, of counsel), for appellant.

Brinnier & Canfield, of Kingston (William D. Brinnier and Palmer Canfield, Jr., both of Kingston, of counsel), for respondent.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOWARD, J. On the 7th day of December, 1894, the plaintiff made application for four shares of the 30-day installment stock of the Co-operative Building Bank. This stock was issued and delivered to the plaintiff. He paid all his dues, and on October 29, 1908, he was notified by the defendant that his stock had reached its maturity value and that he need make no further payment of dues. Subsequently the plaintiff wrote the defendant, stating that he desired to withdraw the maturity value of his stock. The defendant, however, failed to pay to the plaintiff this maturity value, and this suit has been brought to recover the same.

Under the articles of association of the defendant, the stock is deemed to have matured when the amount in the loan fund standing at the credit of the stock equals $100 per share. But the articles of association also provide:

"In no case shall the amount paid out in any week upon withdrawals exceed one-third of the cash receipts of the bank for such week, except by vote of the board of directors. Should the applications for withdrawals exceed the amounts herein provided, such applications shall be numbered and paid in order as received."

[1] The proof is uncontradicted that applications by other shareholders for withdrawals, filed prior to the plaintiff's application, far exceeded one-third of the cash receipts of the defendant between the date of his notice of withdrawal and the date of the commencement of this action. This being so, the matured value of the plaintiff's shares could not be paid until reached in their regular order. The articles of association and by-laws of the defendant constitute the contract between the parties herein. Engelhardt v. Fifth Ward Loan Ass'n, 148 N. Y. 281, 42 N. E. 710, 35 L. R. A. 289. It is entirely clear, therefore, under the contract between the parties, that plaintiff's shares were not due and payable on the date of the commencement of his suit.

[2] It is apparent to the plaintiff, it would seem from his argument and from the opinion in the court below, that he has not established a cause of action under the contract; but he seeks to invoke a certain clause in section 229 of the Banking Law, as amended by chapter 126 of the Laws of 1910. It reads as follows:

"Whenever such applications or demands (applications for withdrawals), whether heretofore or hereafter made, have been on file and remain unpaid wholly or in part for two years, the superintendent of the banks may, in his discretion, forthwith take possession of the property and business of such association, and retain such possession until such association shall resume business or its affairs be finally liquidated as provided in section 19 of this chapter."

We do not conceive that this provision bears any relation whatever to the issues in hand. It simply added another condition to those already enumerated in section 19 of the Banking Law under which the superintendent of banks, in his discretion, was authorized to interfere and take possession of the business of certain delinquent corporations. An examination and comparison of the various sections of the Banking Law as it now stands, leads nowhere to the conclusion that this provision was an implied "command to pay within two years," as was held by the trial justice. Section 19 of the Banking Law specifically

and elaborately points out the duties of the superintendent of banks in case of his seizure of the property and business of a corporation under the circumstances mentioned in section 229, but nowhere is there any intimation in any section of the law that this provision of section 229 is a command to the delinquent corporation to pay shareholders contrary to its articles of association and contrary to its contract obligations.

Without the assistance of section 229 of the Banking Law, there can be no doubt that the plaintiff has wholly failed to establish a cause of action, and inasmuch as this section avails him nothing, it follows that he has failed altogether, and that the judgment should be reversed, and a judgment rendered for the defendant, dismissing the complaint, with costs. All concur.